# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Isaac D. Narvaez Gomez, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 17-0217 (CKK) |
| Kirstjen Nielsen[1] *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Plaintiff is a native of Venezuela who is appearing *pro se*. He seeks a writ of mandamus to compel the federal government to adjudicate his "Form I-589, Application for Asylum and for Withholding of Removal." Am. Pet. for a Writ of Mandamus and Compl. for Declaratory Judgment ("Am. Compl.") at 3 [Dkt. # 12]. Plaintiff further states that he is bringing "claims in relation with the claims of asylum," and he has invoked the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Id*. Plaintiff alleges also that U.S. Customs and Immigration Services ("USCIS") has unlawfully withheld records responsive to his Freedom of Information Act ("FOIA") request submitted in February 2017. *Id*. at 12. In addition to suing high-level officials of the U.S. government, Plaintiff has sued the Bolivarian Republic of Venezuela under the Alien Tort Claims Act, 28 U.S.C. § 1350, and has filed a Motion for Issuance of Request for Service Abroad, which the Court will deny.

---

[1] Plaintiff sued John F. Kelly in his official capacity as United States Secretary of Homeland Security. Am. Pet. ¶ 5. Secretary Kirstjen Nielsen is substituted pursuant to Fed. R. Civ. P. 25(d).

# I. PROCEDURAL BACKGROUND

On April 5, 2017, the federal defendants moved under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's claims "seeking equitable or monetary relief related to his asylum application" and "any claims against [President Trump] in his official or individual capacity." Fed. Defs.' Partial Mot. to Dismiss at 1-2 [Dkt. # 23]. Defendants noted that the instant motion pertains to "all claims in [the] operative complaint . . . except for Plaintiff's claim under the [FOIA]." *Id*. n.1. Plaintiff filed an opposition on April 7, 2017 [Dkt. # 24], and a motion to file a supplemental opposition on September 15, 2017 [Dkt. # 38], which the Court will grant over defendants' objection [Dkt. # 39].

Meanwhile, on March 28, 2017, plaintiff filed an Emergency Motion for Leave to File Second Amended Complaint and Joinder of Parties and Claims [Dkt. # 21], which prompted the Court to delay consideration of the federal defendants' motion to dismiss. *See* Apr. 7, 2017 Order [Dkt. # 25]. Plaintiff has since withdrawn that motion. *See* Not. of Withdrawal of Pl.'s Emergency Mot. for Leave to File Second Am. Compl. and Joinder of Parties and Claims [Dkt. # 36]. Therefore, the federal defendants' fully briefed motion to dismiss is ripe for review. For the reasons explained below, the Court will grant the federal defendants' motion and will dismiss all but plaintiff's FOIA claim against USCIS.

# II. LEGAL STANDARDS

**A. Motions to Dismiss**

1. Federal Rule 12(b)(1)

A party may move under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. To survive such a motion, plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claims. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir.

2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (3d ed. 2017) (noting the "wide array of cases from the four corners of the federal judicial system involving the district court's broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction to resolve factual issues"). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks omitted).

2. Federal Rule 12(b)(6)

A party may move under Rule 12(b)(6) to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In considering such a motion, the Court accepts as true the

well-pleaded allegations in the operative complaint, but it does "not accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

## B. *Pro Se* Pleadings

*Pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but still they must satisfy the minimal requirement of alleging sufficient "factual matter" to permit a court "to infer more than the mere possibility of misconduct[.]" *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (quoting *Atherton v. District of Columbia Off. of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, when considering a motion to dismiss, the court should read the *pro se* filings collectively. Therefore, the Court will consider not only the facts alleged in the amended complaint, but also any facts alleged in plaintiff's opposition and supplemental opposition. *See Brown*, 789 F.3d at 152 ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

## III. ANALYSIS

### A. Defendants' Motion to Dismiss

Defendants contend that plaintiff is not entitled to a writ of mandamus or to any other "equitable or monetary relief related to his asylum application[.]" Defs.' Mot. at 1. The Court agrees.

**1. Equitable Relief**

"Mandamus is a 'drastic' remedy, 'to be invoked only in extraordinary circumstances.' " *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). The Court of Appeals has instructed as follows:

> To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists. These requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction. Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds compelling equitable grounds. The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citations and internal quotation marks omitted).

On April 30, 2017, plaintiff filed a notice indicating that he was scheduled for an asylum interview on May 10, 2017, *see* Not. to the Court [Dkt. # 30], which did in fact occur, *see* Pl.'s Not. to the Court [Dkt. # 33]. Therefore, plaintiff's mandamus claim and his related APA claim predicated on the alleged delay in considering his asylum application are now moot. *See* Pl.'s Opp'n to Fed. Defs.' Partial Mot. to Dismiss at 5 (asserting that the APA "empowers courts to 'compel agency action unlawfully withheld or unreasonably delayed' " and listing six-factor test for determining "whether agency action has been unreasonably delayed"); *cf. Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 119 (D.D.C. 2016) (noting that "courts have frequently held that the only ministerial duty owed by USCIS under Subsection (a)(6) [of the INA] is to respond to the renunciant's request"). The Court would lack jurisdiction over plaintiff's mandamus claim in any event because (1) plaintiff has an adequate remedy under the INA, *see* 8 U.S.C. § 1158, (2) "asylum is a form of discretionary relief" accorded to the Attorney General, *Guevara Flores v. INS*, 786 F.2d 1242, 1248 (5th Cir. 1986), and (3) the Court may "award mandamus relief only

5

to compel the performance of a 'clear nondiscretionary duty.'" *Kwok Sze*, 172 F. Supp. 3d at 118 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Accordingly, the Court grants defendants' motion to dismiss the equitable claims arising from the asylum application under Rule 12(b)(1).

### 2. Claim Against President Trump

Plaintiff purports to sue President Trump in his individual capacity. *See* Am. Compl. ¶¶ 36-37. He seeks "punitive monetary damages . . . in the amount of $500,000,000.00." *Id*. at 22 ¶ 7. *Bivens* recognizes "an implied right of action for damages against federal officers alleged to have violated [certain] constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001). But a *Bivens* lawsuit is against the official in his or her individual capacity. Consequently, "a plaintiff must plead [and be able to prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (a *Bivens* claim requires a showing "that the defendant federal official was personally involved in the illegal conduct"); *Cameron v. Thornburgh*, 983 F.2d 253, 257-58 (D.C. Cir. 1993) (dismissing claims against high-level policymakers "[i]n the absence of any allegations specifying [their] involvement").

Plaintiff has stated no claim against President Trump in his personal capacity, as he alleges no plausible facts showing that Trump was personally involved in the asylum proceedings. Accordingly, the Court grants defendants' motion to dismiss the personal-capacity claim against President Trump under Rule 12(b)(6).

### 3. Official-Capacity Claims

Plaintiff also sues President Trump and the remaining current or former federal officials in their official capacity, *see* Am. Compl. ¶¶ 5-14, 35, which "is, in all respects other than name, to be treated as a suit against the [United States]." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, the official-capacity claims for equitable relief are dismissed for the reasons stated above and the official-capacity claims for monetary relief are dismissed for the reasons stated below.

### 4. Monetary Relief

In his Prayer for Relief, plaintiff seeks "monetary relief in the amount of $35,001,337.00 under the Tucker Act in conjunction with APA[.]" Am. Compl. at 21. By its terms, the APA waives the United States' immunity for certain actions "seeking relief other than money damages." 5 U.S.C. § 702(a). The waiver simply does not apply to plaintiff's claim for money damages. *See McKoy v. Spencer*, 271 F. Supp. 3d 25, 34 (D.D.C. 2017) ("Because these remedies constitute money damages, the Court cannot entertain Plaintiffs' request for them under the APA's waiver of sovereign immunity.").

Plaintiff has not identified any other legal basis for the Tucker Act claim, but this Court would lack jurisdiction nonetheless. The Tucker Act does not confer jurisdiction in the district court over a claim exceeding $10,000. For the amount sought in this case, "[t]he Tucker Act vests exclusive jurisdiction in the United States Court of Federal Claims," and such claims are "against the United States for 'liquidated or unliquidated damages in cases not sounding in tort.'" *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) (quoting 28 U.S.C. § 1491)); *see Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995) ("[A] claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or

in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government.") (citations omitted)). Accordingly, plaintiff's purported Tucker Act claim is dismissed under Rule 12(b)(1).

**B. Plaintiff's Motion for Service upon Venezuela**

"'Federal courts are courts of limited jurisdiction' and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress . . . . The Court begins with the presumption that it does not have subject matter jurisdiction over a case," and "a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim." *McCall v. Yang*, 179 F. Supp. 3d 92, 94 (D.D.C. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Moms Against Mercury*, 483 F.3d at 828). Particularly "in a suit involving a foreign state, a plaintiff must satisfy subject matter jurisdiction under the FSIA before the court can reach claims under the Alien Tort Claims Act," *Soudavar v. Islamic Republic of Iran*, 67 Fed. App'x 618, 619-20 (D.C. Cir. 2003) (per curiam), and "[c]laims against foreign sovereigns that do not fall within the ambit of an FSIA exception are barred," *Simon v. Republic of Hungary*, 812 F. 3d 127, 141 (D.C. Cir. 2016) (citation and internal quotation marks omitted). FSIA immunity, like the United States' immunity, extends to the foreign state, its instrumentalities and its employees sued in their official capacity. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997) (citing 28 U.S.C. § 1603(a)).

Before considering plaintiff's motion to serve Venezuela with process, the Court directed that he explain why his purported claims are not barred under the FSIA. *See* Apr. 7, 2017 Order ¶ 3 [Dkt. # 25]. Plaintiff's explanation is mystifying. Plaintiff asserts that he is "*de facto* stateless" because Venezuela "*de facto* stripped" him of his Venezuelan nationality on January 6, 2017. Mem. in Supp. of Mot. for Issuance of Request for Service Abroad ("Supp. Mem.") at 1

[Dkt. # 26]. He alleges a vast "corruption scheme in which Venezuelan passports and identification documents . . . are being sold to the highest bidders," and he suggests that such schemes are run by "organized crime syndicates in Venezuela, with the tacit approval of the government[.]" *Id*. at 1-2. Plaintiff claims, apparently because of the alleged corrupt acts, that he is "falsely imprisoned" in the United States--but yet he seeks asylum here. *Id*. at 2.

Plaintiff cites portions of 28 U.S.C. § 1605(a)(5), *see id*. at 3, which waives a foreign state's immunity where:

> money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
>
> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
>
> (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]

28 U.S.C. § 1605(a)(5). The Court of Appeals has aptly observed: "It is unclear precisely what must be alleged to bring a claim within [the tortious activity] exception and thereby confer jurisdiction. There may well be instances in which an allegation is so vague or so obviously lacking a fundamental element of the alleged tort that the activity cannot properly be labeled "tortious" for purposes of section 1605(a)(5)." *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987). Such is the situation here. In addition to the unsubstantiated claim of false imprisonment, plaintiff accuses Venezuela of "intentional infliction of emotional distress and loss of enjoyment of life." Supp. Mem. at 2. Plaintiff refers to "[o]ne example" in the Amended Complaint where he alleges that a Venezuelan official at the Venezuelan embassy in the District of Columbia "openly intimidated" him, which apparently left

9

him with "intense feelings of sadness and powerlessness of being imprisoned in another country that [he] is seeking haven on by corrupt Venezuelan officials who steal from governmental funds . . . ." *Id*. at 2-3.

In the Amended Complaint, plaintiff alleges that on July 25, 2016, he went to the consulate's office at the Venezuelan embassy to renew his Venezuelan passport, which was to expire on January 6, 2017. Am. Compl. ¶ 25. Plaintiff showed the clerk his passport and birth certificate but "the clerk demanded a document called 'cedula de identidad' . . . given to people who were over the age of 10." *Id*. Plaintiff alleges that he "was never issued one because he left Venezuela at age 8." *Id*. When plaintiff asked if the document could be issued, "she replied that he would have to return to Venezuela to get it." *Id*. Plaintiff then spoke with "the Consul in charge," who confirmed that Plaintiff needed the document to renew his passport but allegedly "promised to issue a temporary" document "and promised to call a few weeks later." *Id*. Allegedly, as Plaintiff "was writing his information for the clerk, a Venezuelan official started to make intimidating gestures." *Id*. When plaintiff "asked for the official's name," the official allegedly questioned plaintiff's authority, which "escalated with the Venezuelan official making intimidating remarks." *Id*. Plaintiff "quickly ran out of the Embassy" in "fear" and "took three different Uber rides to avoid possible tailing by Venezuelan officials." *Id*.

Plaintiff has alleged no injury beyond his fears, and the Court cannot exercise jurisdiction over any defendant, let alone a foreign state, on such flimsy allegations. For it is well-established that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As a result, plaintiff's motion for service will be denied and the complaint against Venezuela will be

dismissed pursuant to Fed. R. Civ. P. 12(h)(3), which requires immediate dismissal "at any time" the Court determines that it lacks subject matter jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the Federal Defendants' Partial Motion to Dismiss and dismisses all claims except plaintiff's FOIA claim.  In addition, the Court dismisses the complaint against Venezuela for want of subject matter jurisdiction.  An appropriate Order accompanies this Memorandum Opinion.


_____s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date:   March 22, 2018